**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| MAHRA MAGDALENA GARCIA, | § | |
|     **Plaintiff,** | § | |
| **v.** | § | NO.  EP-15-CV-0246-LS |
| | § | |
| CAROLYN W. COLVIN, | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
|     **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this civil action seeking judicial review of an administrative decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability insurance benefits and supplemental security income under Title II and Title XVI, respectively, of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Upon consent of the parties, the case was transferred to this Court pursuant to the provisions of 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas to conduct any and all further proceedings in the cause including trial and entry of judgment. [ECF No. 20] For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## I. FACTS AND PROCEEDINGS[1]

In April 2012 Plaintiff filed applications for disability insurance benefits and supplemental security income with an alleged onset date of April 1, 2012, due to limitations caused by her medical conditions. (R:13) After Plaintiff's applications were denied initially and on reconsideration, Administrative Law Judge (ALJ) Ann Farris held a hearing in March 2014. The ALJ issued a decision on May 5, 2014, concluding that Plaintiff was not disabled. (R:13-23) The

---

[1] Reference to the Administrative Record, contained in Docket Entry Number 16, is designated by an "R" followed by the page number(s).

Appeals Council denied review making the ALJ's decision the final administrative decision of the Commissioner. (R:1-4) This appeal followed.

## II. ISSUES

Plaintiff contends that the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence. She claims that in making the RFC determination the ALJ failed to properly consider all of Plaintiff's limitations, failed to give proper weight to a treating physician's opinion, and failed to properly develop the record with a consultative examination or request for clarification from the physician. For these reasons, Plaintiff contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner and not for the courts to resolve. *Perez*, 415 F.3d at 461.

## IV. EVALUATION PROCESS

A claimant bears the burden of proving a disability, which is defined as any medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant

from engaging in substantial gainful activity. *See* 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A); 20

C.F.R. §§ 404.1505(a), 416.905(a); *Masterson*, 309 F.3d at 271.

The ALJ evaluates disability claims according to a sequential five-step process:

1. Is the claimant engaged in substantial gainful activity?
   A claimant who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. Does the claimant have a "severe" impairment?
   A claimant who does not have a severe impairment or combination of impairments will not be found disabled;

3. Does the impairment meet or equal the severity of an Appendix 1 impairment?
   A claimant who has an impairment or combination of impairments that meets or equals the severity of an impairment listed in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;

4. Is the claimant able to perform her past relevant work?
   If a claimant is capable of performing work she has done in the past, a finding of "not disabled" must be made; and

5. Is the claimant able to perform other substantial gainful work in the economy?
   If a claimant's impairment prevents her from doing any other substantial gainful activity, taking into account age, education, past work experience, and residual functional capacity, a finding of disabled will be made.

*Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.

1991); *see also* 20 C.F.R. §§ 404.1520, 416.920.

Before proceeding from step 3 to step 4, the Commissioner must assess the claimant's RFC

which is defined as the most the claimant can still do despite her physical and mental limitations.

*See Perez*, 415 F.3d at 461-62. The RFC is used at step 4 to determine if the claimant can continue

to perform her past relevant work. *Id.* at 462. At step 5 the RFC is used to determine whether the

claimant is capable of performing any other work. *Id.*

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v.*

3

*Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant meets this burden, the burden then shifts to the Commissioner at step 5 to show that there is other gainful employment available that the claimant is capable of performing in spite of her existing impairments. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). If the Commissioner meets this burden, the claimant must then prove that she cannot perform the alternate work. *Id.*

The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett*, 67 F.3d at 564. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Id.*

The mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of her impairments and how they affect her ability to work. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c). Her own subjective complaints without objective medical evidence of record are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529, 416.908, 416.928, 416.929.

## V. THE ALJ'S DECISION

After reviewing the record evidence, the ALJ made the following determinations:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (R:15)

2. Plaintiff had not engaged in substantial gainful activity since April 1, 2012, the alleged onset date. (R:15)

3. Plaintiff had severe impairments of: status-post craniotomy and radiation treatment for a tumor at the skull base; mild residual hearing loss; diplopia when tired; Horner

4

Syndrome; diabetes insipidus; and alcohol abuse.[2] (R:15)

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:16)

5. Plaintiff retained the residual functional capacity to perform sedentary work with additional postural and environmental limitations. (R:17) *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).[3]

6. Plaintiff was not capable of performing her past work as a cashier, a sales clerk, a security guard, or a stock clerk. (R:22)

7. Considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as an egg processor, a cuff holder, and a bench hand. (R:22, 23)

Consequently, the ALJ concluded that Plaintiff was not disabled from her alleged onset date through the date of the ALJ's decision. (R:23)

## VI. DISCUSSION

Plaintiff asserts that the ALJ erred in determining her residual functional capacity by failing to properly accommodate her limitations. She further argues that in determining her RFC the ALJ failed to properly consider the opinions of Dr. David Grosshans, a treating physician. The

---

[2] A craniotomy refers to any operation on or incision into the cranium. *See Dorland's Illustrated Medical Dictionary*, 416 (29th ed. 2000). Diplopia is the perception of two images of a single object, and is also called double vision. *Id.* at 508. Horner's Syndrome is caused by a disruption of the nerve pathway from the brain to one side of the face resulting in a drooping eyelid, a constricted pupil, and little or no sweating on the affected side of the face. *Id.* at 1757. Diabetes insipidus is a disorder characterized by excessive urination causing dehydration and intense thirst and may result from damage to the pituitary gland. *Id.* at 489.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). "Occasionally" means occurring from very little to up to one-third of the time, which for sedentary work should generally total no more than about 2 hours of standing or walking and approximately 6 hours of sitting in an 8-hour workday. Social Security Ruling 83-10.

Defendant responds that the ALJ properly considered the limiting effects of Plaintiff's impairments and that substantial evidence supports the decision of the ALJ.

Residual functional capacity is the most an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. The responsibility to determine a claimant's RFC belongs to the ALJ. 20 C.F.R. §§ 404.1546, 416.946; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ must consider a claimant's abilities despite her physical and mental limitations based on the relevant evidence in the record. *Perez*, 415 F.3d at 461-62. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545, 416.929, 416.945. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001).

Plaintiff underwent surgery in April 2012 for a brain tumor at the base of the skull. (R:220) She subsequently underwent proton radiation treatment near the pituitary area from June 2012 to August 2012. (R:220, 454) On August 3, 2012, Dr. David Grosshans, a radiation oncologist at MD Anderson Cancer Center, prepared a statement indicating that Plaintiff was treated with radiation therapy there at the Center. (R:390) He opined that she had significant vision impairment which may impair her ability to read informational signs or symbols and that such impairment may be permanent unless the condition drastically improved. (R:390) On February 12, 2013, Dr. Grosshans prepared a statement indicating that Plaintiff had cancer of the skull base with vision impairment, hearing impairment, and neurological conditions due to the tumor and treatments she had received. (R:394) He stated that her impairments were most likely permanent. (R:394)

Review of the record shows that the ALJ's RFC determination is supported by substantial

evidence. First, evidence relating to Plaintiff's vision shows that Dr. Jade Schiffman conducted a neuro-opthalmology exam in June 2012 and found her to have normal visual acuity and full visual fields in both eyes. (R:340-44) Examination did reveal the presence of right cranial nerve-6 palsy and right cranial nerve-5 paresis.[4] (R:344) Plaintiff's eye conditions were managed with prism glasses and eye drop solutions. (R:344, 432) Upon examination in February 2013 Dr. Grosshans reported that Plaintiff's "eye tracks better today than when I last saw her" and that she "was doing very well clinically." (R:408) Dr. Paul Gidley also examined Plaintiff in February 2013 and noted that her extraocular motion was intact with no visible nystagmus. (R:406) Plaintiff reported being more diligent with use of the eye drops for treatment of her dry eye condition. (R:408) In July 2013 Plaintiff reported only "occasional double vision, which is improving." (R:456) In February 2014 Dr. Dan Gombos examined Plaintiff and assessed her visual acuity and visual fields as normal in both eyes. (R:430, 431) Dr. Andrew Whyte also examined Plaintiff at that time and noted that she continued to use the prism glasses as needed and continued treatment with the eye drop solution. (R:432-34) Plaintiff reported that she generally did not experience double vision until the end of the day or when extremely tired. (R:432-34)

With respect to Plaintiff's hearing impairment, the evidence shows that in June 2012 James Hall conducted a consultative audiology evaluation of Plaintiff. Although he assessed various levels of hearing loss, he opined that she would be expected to experience at least minimal difficulty with normal conversation when in a noisy listening environment. (R:338) Mr. Hall recommended that she avoid noise exposure and use ear protection. (R:338, 339) Upon examination in February 2013 Mr. Hall determined that Plaintiff experienced some improvement

---

[4] Cranial nerve palsy refers to facial paralysis while paresis refers to partial paralysis or weakness. *See Dorland's Illustrated Medical Dictionary*, 1307, 1324 (29th ed. 2000).

in her hearing loss. He noted that her hearing was improving and stable and would be monitored conservatively. (R:403) He opined that she would be expected to experience no more than minimal difficulty in hearing and understanding normal conversational speech in most listening environments. (R:399) Plaintiff was examined by Dr. Gidley in February 2013, who determined that her hearing had improved and was stable. (R:406-07) He indicated that she would be monitored conservatively. (R:407)

Also, evidence regarding Plaintiff's neurological conditions shows that post-surgery she exhibited an unassisted gait, intact speech and memory, and normal motor strength in her upper and lower extremities. (R:276, 279) In May 2012 Dr. Grosshans reported that she had full motor strength in both her upper and lower extremities. (R:351) Dr. Susan McGovern examined Plaintiff in July 2012 and found that she had normal strength (5/5) in her upper and lower extremities. (R:322) In February 2013 Dr. Grosshans reported that she ambulated without difficulty and that she had full strength in her upper and lower extremities. (R:408) He further reported MRI results showing Plaintiff's lesion to be smaller compared to the pre-radiotherapy scan. (R:408) Dr. Grosshans reported at that time that Plaintiff was "doing very well clinically." (R:408) An MRI of Plaintiff's face and skull in July 2013 revealed her condition as stable with no evidence of progression. (R:422) Moreover, upon examination of Plaintiff in February 2014, Dr. Maria Cabanillas found no evidence of anterior pituitary deficiencies and determined that her right cranial nerve-6 palsy and nerve-5 paresis were stable. (R:437)

Thus, the evidence shows that the ALJ adequately accommodated Plaintiff's functional limitations by restricting her to sedentary work with additional postural and environmental limitations. The ALJ accounted for Plaintiff's hearing by restricting her to working in no more

than moderate noise level. Also, in response to Plaintiff's testimony that exposure to cold air caused her to experience facial stiffness, the ALJ incorporated into the RFC determination a restriction precluding exposure to extreme cold. (R:42-43) Plaintiff fails to show, and the evidence does not reflect, that any physicians imposed functional limitations beyond those recognized by the ALJ in her RFC determination. Consequently, the Court finds that substantial evidence supports the ALJ's RFC decision.

Plaintiff also contends that in determining her RFC, the ALJ failed to properly weigh Dr. Grosshans' opinions from August 2012 and February 2013. Ordinarily the opinions of a treating physician who is familiar with the claimant's conditions should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citation omitted). If a treating physician's opinion on the nature and severity of an impairment is well supported by objective medical evidence and not inconsistent with other substantial evidence, it will be given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Id.* at 456. Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's view under the criteria set forth in 20 C.F.R. §§ 404.1527, 416.927. *See id.* at 453.

Here, the ALJ considered Dr. Grosshans' opinions but noted their inconsistencies with the

physician's own treatment records and with Plaintiff's reported improvements. The ALJ noted that contrary to the physician's statements, Plaintiff reported improvement in her vision and Dr. Grosshans reported her to be "doing very well clinically." (R:20, 21) Moreover, the opinions are controverted by other opinions from examining physicians at the MD Anderson Cancer Center. Dr. Gombos assessed Plaintiff with normal visual acuity, and Dr. Gidley found Plaintiff's hearing had improved and was stable. As shown above, the evidence demonstrates that Plaintiff's condition continued to improve or remained stable. Aside from stating that Plaintiff had impairments that were most likely permanent, Dr. Grosshans' opinions do not indicate any functional limitations. Thus, in addition to being unsupported and contrary to other evidence, Dr. Grosshans' statements are conclusory and not entitled to controlling weight. *See Leggett*, 67 F.3d at 566 (good cause for abandoning the treating physician rule includes disregarding statements that are brief and conclusory and unsupported by the evidence).

Plaintiff further argues that the ALJ should have requested clarification from Dr. Grosshans or requested a consultative examination to further develop the record. However, recontacting a physician is only required when the ALJ cannot reach a conclusion about the claimant's disability. *See* 20 C.F.R. §§ 404.1520b, 416.920b. Similarly, a consultative examination will not be required unless the ALJ is unable to reach a disability determination on the available evidence. *See* 20 C.F.R. §§ 404.1519a, 416.919a; *see also Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (a consultative examination at government expense is not required unless necessary to enable the ALJ to make a disability decision). In her decision, the ALJ thoroughly examined the evidence and was able to make her determinations based upon such evidence. The Court has already found that substantial evidence supports the ALJ's RFC determination. Thus,

Plaintiff fails to show error on the part of the ALJ.

Even assuming the ALJ erred in failing to properly consider the evidence or to develop the record, Plaintiff fails to demonstrate any harm from the alleged errors. She has not shown how the record was inadequate for the ALJ to make her determinations. Moreover, substantial evidence supports the ALJ's RFC and disability determinations. Thus, Plaintiff fails to demonstrate any prejudice from the ALJ's consideration of the evidence or her decisions. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (the court will not vacate a judgment unless the substantial rights of a party have been affected).

**VII. CONCLUSION**

Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

**SIGNED** and **ENTERED** on July 21, 2016.

_____
**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**

11